IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:14CR205 RWS |
| vs. ) | |
| ) | |
| COLEMAN CARPENTER, ) | |
| ) | |
| Defendant. ) | |

**GOVERNEMNT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE
<u>PRESENTENCE INVESTIGATION REPORT</u>**

COMES NOW the United States of America, by and through Richard G. Callahan, United States Attorney for this district and his undersigned assistant and respectfully responds to the objections to the Presentence Investigation Report ("PSR") lodged by the Defendant [Document #67] as follows.

*The Proper Loss Computation*

Defendant raises a number of objections to the loss computation contained in the PSR throughout his objections.

The PSR recommends a total loss of approximately $1.47 million dollars.  PSR at ¶¶ 24, 28, 33.  The government, using a different method to estimate loss, recommends a total loss of approximately $937,000.  <u>Id.</u> at 72.

The Defendant correctly asserts that, in the present case, it is impossible to precisely determine the exact loss to the victim.  This is so because the Defendant overpaid for agricultural commodities in hundreds of different instances spanning a number of years.  <u>Id.</u> at ¶¶ 13-19; <u>see also</u> Guilty Plea Agreement at pp. 2-3.  The actual loss in this case could only be computed with the knowledge of the applicable market price for a particular commodity at the time of day when

Defendant agreed to purchase it at an above-market price. That information is not available to the parties or the Court. However, while impossible to precisely calculate the loss to Bunge, it is certain that both the victim's method (used in the PSR) and the government's method of estimating the loss understates the actual loss suffered by the victim in this case. For each fraudulent transaction, Defendant has admitted to intentionally overpaying victim funds for commodities. The price paid by Defendant is known, the price Defendant should have paid (always a lower price than actually paid) is not known because that price fluctuates throughout the trading day.

The victim has estimated its losses by giving the Defendant the benefit of this doubt and assuming in every single transaction that the Defendant could have or should have paid its customer the high market price of the day for the particular commodity. The victim has done this even though it is certain that the Defendant knew the market price he should have paid in many instances was lower than the high price of the day. See, e.g., Indictment at ¶ 6.

The government has been even more generous in calculating the loss in this case by using the two-day high price of a particular transaction. In his plea agreement, the Defendant acknowledged that, at the least, the amounts he intentionally overpaid the victim's clients was $937,000 more than the applicable two-day high. Guilty Plea at p. 3. The government has used this more lenient method of computing loss because it is possible that, from time to time, orders and contracts verbally made on one day would not be formally booked and reported until the next business day during which the proper price payable to a victim's customer could climb higher than the previous day's high price. Although such a circumstance would be unusual, the government has assumed every one of the fraudulent transactions occurred in this way to ensure beyond any doubt that its loss amount is not overstated as to even a single transaction.

Although not possible to compute with precision, the Court is permitted to make a

reasonable estimate of the loss in this case.  U.S.S.G. § 2B1.1, n.3(C).  In the present case, the government has reasonable estimated at least a minimum loss amount.  Therefore, the government respectfully requests the Court use its loss estimate and add 14 levels to Defendant's base offense level and compute the total offense level to be 20.

*Acceptance of Payments from Benefitting Customers*

The Defendant makes objections to those portions of the PSR which refer to his receipt of money in the form of checks and suspected cash payments from clients of the victim who benefitted from his overpayment scheme.  PSR at ¶¶ 21, 24.  As set forth in the PSR, the Defendant admittedly received $20,000 from one of the benefitting customers during the existence of the scheme.  The government can establish through reliable evidence that such payments were improper under the victim's company rules and customary practices in the industry. Additionally, it is undisputed that Defendant deposited in excess of $45,000 in unexplained cash into his personal bank account during the existence of the scheme.

It is true that Defendant has never admitted that such checks and cash were bribes or gratuities paid from the beneficiaries of his scheme, but the government believes that conclusion is a fair inference in light of all the facts and circumstances of the case and should remain in the PSR.

*Possible Alternation of Weights and Grades on Tickets at Hickman Elevator*

As set forth in the PSR, the government does not believe it is in possession of reliable evidence from which the Court could conclude by a preponderance of the evidence that the conduct alleged in paragraph 25 of the PSR occurred and that the Defendant caused such conduct to occur.  Therefore, the government agrees with Defendant's objection as to paragraph 25.

*Circumstances of Defendant's Arrest*

The government believes the assertion contained in Defendant's objection to paragraph 27

is accurate.   However, the PSR does not misstate the facts of the Defendant arrest.   To the extent the Court wishes to add that the Defendant voluntarily surrendered to the FBI at their offices in St. Louis, the government does not object to such an addition to the PSR.   Otherwise, the government suggests the Defendant's objection is moot.

*Attorney's Fees*

Defendant accurately states that victim's attorney's fees shall be excluded from the loss calculation and, as the government reads the PSR, no such fees were used to calculate the loss. Restitution is another matter.   The Eighth Circuit has approved the inclusion of fees caused by the investigation and evaluation of fraudulent conduct by the Defendant.   United States v. DeRosier, 501 F.3d 888,896-97 (8th Cir. 2007) (citing United States v. Piggie, 303 F.3d 923. 928 (8th Cir. 2003) and United States v. Akbani, 151 F.3d 774, 780 (8th Cir. 1998).   The government believes the victim's attorney's fees in the present case are related to the Defendant's misconduct and are supported by reliable evidence and can be properly included in the restitution order for this case.

                                                      Respectfully submitted,

                                                      RICHARD G. CALLAHAN
United States Attorney
/s/ Thomas C. Albus
Thomas C. Albus, #46224MO
Assistant United States Attorney

A true and accurate copy of the foregoing was served upon counsel for the Defendant by operation of the Court's electronic filing system this 7th day of October, 2015.

                                                      /s/ Thomas C. Albus