UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14 CR 205 RWS |
| | ) | |
| COLEMAN CARPENTER, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Defendant Coleman Carpenter pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341, a charge that arose from a scheme in which he overpaid for commodities while managing a grain elevator for Bunge of North America. I ordered Carpenter to pay $1,561,516.25 in restitution to Bunge, which included $87,536.65 in attorney's fees and costs Bunge paid to outside counsel during the investigation and prosecution of Carpenter's scheme. Carpenter appealed the restitution award. The Eighth Circuit Court of Appeals affirmed the portion of the award that does not include attorney's fees ($1,473,980.00), vacated the portion awarding attorney's fees and expenses, and remanded the matter with instructions that I specifically address whether the attorney's fees incurred after the government initiated its own investigation were "necessary" under 18 U.S.C. § 3663A(b)(4). *See United States v. Carpenter*, 841 F.3d 1057, 1062 (8th Cir.

2016). After renewed review of the evidence and objections presented, I will award $74,453.89 in restitution for legal fees and associated costs.

## BACKGROUND

Carpenter managed a grain elevator owned by Bunge in Hickman, Kentucky. In that capacity, he bought agricultural commodities. He was authorized to purchase commodities "on the spot" and enter into futures contracts. Carpenter had limited authority to adjust the price Bunge paid in futures contracts. Between 2009 and 2013, Carpenter frequently entered into futures contracts that exceeded his price authority, meaning he contracted for Bunge to overpay for commodities. During the scheme, Carpenter received large payments of money from some of the grain elevator customers. In 2013, Bunge discovered Carpenter's fraud during an internal audit. Bunge, with assistance from its outside counsel, the Thompson Coburn law firm, reviewed Carpenter's unauthorized transactions and provided information to the United States Attorney. A federal grand jury returned an indictment against Carpenter on June 25, 2014.

Carpenter pleaded guilty to one count of mail fraud in connection with this scheme. After sentencing, the parties filed briefs on the appropriate amount of restitution. The U.S. Attorney submitted a declaration from Bunge, dated September 8, 2015, that stated Bunge had incurred $97,262.94 in attorney's fees and costs paid to Thompson Coburn. Carpenter objected to the attorney's fees,

arguing the fees incurred after the government started its investigation were not necessary and that, even if some fees were necessary, the award should be reduced because some of the entries were redacted or otherwise did not show the requested fees were necessary. After considering the evidence, arguments, and objections, I reduced the attorney's fees and costs requested by 10% and found that the U.S. Attorney had shown by a preponderance of the evidence that the total restitution due from Carpenter to Bunge was $1,561,516.25, which included $87,536.65 for attorney's fees Bunge paid to outside counsel.

Carpenter appealed the restitution award. The Eighth Circuit affirmed the portion of the award that does not include attorney's fees, vacated the award of attorney's fees and expenses, and remanded the matter with an instruction that I specifically address whether the attorney's fees incurred after the U.S. Attorney initiated its own investigation were "necessary" under 18 U.S.C. § 3663A(b)(4). I held a status conference in this matter and set a schedule for the U.S. Attorney to file a brief on the necessity of the fees and for Carpenter to file a response.

In its brief, the U.S. Attorney suggests that by considering Carpenter's arguments that all of the fees and costs were not necessary and then reducing the requested fee award by 10% for certain items not directly related to the investigation, I already considered whether the fees were necessary and, as a result, the amount I previously awarded was necessary. The U.S. Attorney again asserts,

3

as it did at sentencing and in its prior brief, that the assistance of Bunge and their counsel was essential to the presentation of the case and its preparation for trial and sentencing, particularly as "this was a complex fraud scheme involving an arcane area of commerce." ECF No. 118, at 2.

Carpenter argues that the attorney's fees were not necessary and renews his specific objections to the request. He argues: (1) the U.S. Attorney has not explained why it needed private outside counsel to assist it in prosecuting this case, (2) even if some assistance by private counsel was necessary, Bunge's in-house counsel should have been able to handle it and private outside counsel was not necessary, and (3) even if there was a need for private outside counsel, the itemized attorney fee billing submitted includes a number of entries not shown to be necessary, including redacted and vague entries that do not contain enough information to show how the services at issue were necessary.

## LEGAL STANDARD

Under the Mandatory Victims Restitution Act, an order of restitution shall require a defendant to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). The Eighth Circuit has "'specifically approved of the inclusion of attorney's fees and investigative costs in a restitution

award when these losses were caused by the fraudulent conduct.'" *Carpenter*, 841 F.3d at 1062 (quoting *United States v. DeRosier*, 501 F.3d 888, 897 (8th Cir. 2007)). "The government bears the burden of proving the amount of restitution based on a preponderance of the evidence" and must satisfy "the statutory requirement of showing such costs were necessary . . . expenses incurred during participation in the investigation or prosecution of the offense." *Id.* at 1060, 1062 (quotation marks omitted).

## ANALYSIS

Bunge's September 8, 2015 declaration stated it had incurred $97,262.94 in attorney's fees and costs paid to Thompson Coburn. On renewed review of the itemized billing invoices in the record, I note that the invoices only include charges incurred through July 31, 2015, and the sum of the amounts requested in those invoices is only $88,453.89. Though Carpenter did not bring this to my attention in his objections, I conclude the lack of itemized billing invoices or other specific information about the charges incurred after July 31, 2015 makes it impossible for me to determine whether charges incurred during that time were necessary. As a result, I will use $88,453.89 as the starting point for attorney's fees and costs.

1. **Use of private outside counsel**

As the Eighth Circuit explained in the appeal in this case, this circuit is among those that take a "somewhat broader view" of the loss allowed in a

restitution award and has "'specifically approved of the inclusion of attorney's fees and investigative costs in a restitution award when these losses were caused by the fraudulent conduct.'" *Carpenter*, 841 F.3d at 1062 (quoting *DeRosier*, 501 F.3d at 897).[1] The MVRA authorizes reimbursement of "necessary . . . expenses incurred *during participation in the investigation or prosecution* of the offense." 18 U.S.C. § 3663A(b)(4) (emphasis added). Bunge is entitled to restitution for attorney's fees and expenses it had to incur to advance the investigation or prosecution of Carpenter's fraudulent scheme, both before the government became involved and after. *See United States v. Nosal*, 844 F.3d 1024, 1047 (9th Cir. 2016) (explaining the government must present evidence showing "it was reasonably necessary for [the victim] to incur attorneys' and investigator's fees to participate in the investigation or prosecution of the offense" (quotation marks omitted)); *United States v. Cuti*, 778 F.3d 83, 93 (2d Cir. 2015) (explaining that "necessary" expenses are "'expenses the victim *was required to incur to advance the investigation* or prosecution of the offense'" (quoting *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) (emphasis in original)).

In support of the request for attorney's fees, the U.S. Attorney submitted a two-page declaration from Bunge's Director of Interior Assets, who reviewed the invoices Thompson Coburn submitted to Bunge on this matter and participated in

---

[1] There is no dispute that the attorney's fees incurred by Bunge's use of outside counsel were caused by Carpenter's fraudulent conduct.

Bunge's internal investigation and its responses to requests from the government. The declaration explained that Bunge hired Thompson Coburn to assist its internal investigation and that Bunge's in-house counsel, its employees working at the direction of in-house counsel, and counsel at Thompson Coburn spent hundreds of hours reviewing and analyzing thousands of transactions at the Hickman Elevator and other elevators operated by Bunge. The declaration explained that Bunge had to respond to government requests for documents and meet with government investigators on numerous occasions.

In addition to the declaration, the U.S. Attorney submitted nearly 60 pages of billing invoices from Thompson Coburn detailing the fees and expenses requested. The billing records indicate that Thompson Coburn assisted Bunge in, among other functions: reviewing and analyzing investigation materials; preparing for client interviews and testimony; meeting and communicating with the government about the investigation and prosecution; document production to the government; communicating and meeting with other relevant actors and counsel; and conducting legal research relevant to Bunge's participation in the case. The bills also include costs for a number of necessary cash outlays, including document management services related to production.

These functions were necessary to Bunge's participation in the investigation and prosecution of the offense. *See, e.g.*, *United States v. Amato*, 540 F.3d 153,

161–62 (2d Cir. 2008) (explaining that attorney fees are "obviously associated with investigation and prosecution, particularly in the case of fraud offenses" and finding no error in district court's award of restitution for costs related to law firm assisting company in completing investigation, reporting fraud to government, meeting with government, gathering evidence and responding to document requests, and performing analysis necessary to uncover extent of fraud and ensure clients were made whole). Bunge did not seek restitution for use of its own personnel, which eliminates any concern about duplicative recovery for work by their staff and outside counsel. And I find no support for Carpenter's argument that Bunge was required to rely only on its own in-house counsel to assist in the investigation and prosecution. *See, e.g.*, *United States v. Bahel*, 662 F.3d 610, 648 (2d Cir. 2011) (rejecting argument that restitution is limited to the cost of in-house counsel and noting that "nothing in the record indicates that it is uncommon for an organization to retain outside counsel in connection with investigations into internal fraud").

While the declaration and invoices could have been more detailed, I find the evidence satisfies the U.S. Attorney's burden of showing that expenses incurred for these purposes, which represent the majority of fees, did not substitute for the U.S. Attorney serving its function and were necessary for Bunge to participate in the investigation and prosecution of the offense.

8

## 2. Objections to specific entries

Carpenter renews a number of specific objections to the billing entries, arguing some entries are too vague or otherwise not shown to be necessary. After careful review, I conclude a reduction of $14,000 appropriately reduces the award to account for those fees and costs not shown to be necessary.

Carpenter first argues that amounts attributable to redacted billing entries should be removed from the award because the entries lack the specificity required to determine whether they were necessary. I have again reviewed the redacted entries and conclude the majority of the entries contain sufficient information to allow me to determine that the fees charged were reasonable and necessary. *Cf. Protective Life Ins. Co. v. Kridner*, 2013 WL 1249205, at *5 (D. Minn. Mar. 27, 2013) ("Redaction of billing records is acceptable so long as the court has sufficient information to form an opinion on the reasonableness of the fees." (quotation marks omitted)); *Monsanto Co. v. Bayer Cropscience, N.V.*, 2007 WL 1098504, at *9 (E.D. Mo. Apr. 12, 2007) (permitting recovery of fees for partially redacted entries that were "not so vague as to prevent this Court from reviewing the reasonableness of the hours billed").

Most of the redacted entries are partially redacted entries that remove the substance of conversations with the client while still indicating that time was billed for reasonable amounts of time spent on client communication on this matter.

Given the context of the billing records overall and the supporting affidavit, I can determine those fees are reasonable and necessary without requiring access to privileged information. I will reduce the award by $2,500 for redacted entries that are entirely redacted, do not appear to relate to reasonable amounts of time spent communicating with the client, or do not contain enough information to evaluate the time spent, such as entries for "Draft talking points Redacted" on April 11, 2014 and "Review and identify key documents for Redacted" on May 5, 2014.[2] *Cf. Protective Life*, 2013 WL 1249205, at *5 ("Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended." (quotation marks omitted)).

I will sustain Carpenter's objections to a number of requests that are too vague or otherwise not shown to be necessary. For example, on April 9, 2014, 2.70 hours are billed for "Review and revise memorandum and powerpoint," without sufficient information to assess relevance to the investigation or prosecution. Time spent on "proposing language for press release" and research on "punitive damage issues" is not shown to have been reasonably necessary to the investigation or prosecution. The bills also include a number of non-specific costs, such as "courier services," "reproduction charges," and "hard drives." I will reduce the award by $3,000 for entries that are too vague or otherwise not shown

---

[2] In instances where a single billing entry contained multiple activities, some recoverable and some not, I estimated the appropriate reduction by cutting the time billed in half.

to be necessary to the investigation or prosecution.

Carpenter objects to time Thompson Coburn spent preparing a motion to quash a subpoena Carpenter served on Bunge, arguing the U.S. Attorney could have prepared and filed this motion to quash. The U.S. Attorney did file a motion to amend or correct the subpoena one day before Thompson Coburn filed its motion to quash. I granted the U.S. Attorney's motion to amend or correct. The billing records indicate that Thompson Coburn and the U.S. Attorney coordinated on their motions, and they asked for similar relief, though the motion filed by Thompson Coburn asked for more extensive relief. While Bunge had the right to act to protect its own interests, the U.S. Attorney has not shown that Thompson Coburn's efforts were necessary expenses incurred to advance the *investigation or prosecution* or were not largely duplicative of the U.S. Attorney's efforts. As a result, I will reduce the award by $8,500 for fees and costs related to this issue.

Finally, Carpenter objects to time spent working on restitution issues. It was necessary for Bunge's counsel to spend time on restitution issues, which were complicated in this case, because Bunge had to provide loss information and victim impact statements and correspond with the United States Probation Office regarding restitution issues.

I find that the evidence presented satisfies the U.S. Attorney's burden of showing that the majority of attorney's fees incurred by Bunge were necessary. I

11

will award $74,453.89 in restitution for legal fees and associated costs, based on a starting point of $88,453.89 supported by itemized invoices and a reduction of $14,000 for fees and costs not shown to be necessary.

Accordingly,

**IT IS HEREBY ORDERED** that restitution for legal fees and associated costs due to Bunge North America from Coleman Carpenter is $74,453.89. Total restitution due is $1,548,433.89. An amended judgment will issue.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 29th day of June, 2017.